IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

IN THE MATTER OF THE SEARCH OF:

In the Matter of the Search and Seizure Warrant

for the Premises Known and Described as 379 Quaker Ridge Road, Greene, Maine and the Person of Sergei Bachkovsky, a/k/a Sergey Bachkovsky

Case No. 2:24-mj-00188-KFW

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, John Thompson, being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND

1.      I am a Special Agent with the United States Fish and Wildlife Service ("FWS") and have been since approximately August 2021.  I was previously employed by the FWS as a Federal Wildlife Officer for approximately seven years, and as a Wildlife Inspector for approximately four years.  I have received specialized training and possess experience in the enforcement of federal laws including the Endangered Species Act, the Lacey Act, and the Marine Mammal Protection Act.  I have participated in numerous federal investigations, either as a case agent/officer or in various support roles, including but not limited to investigations involving the unlawful killing, transport, export, import, possession, and sale of wildlife.  I have also received training in investigating crimes committed with the aid of the internet and email and I have participated in the execution of arrests and search warrants.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by

individuals involved in wildlife trafficking to conceal their actions from detection by law enforcement.

## PLACES TO BE SEARCHED AND ITEMS TO BE SEIZED

2.      This affidavit is made in support of an application for a search warrant for the residence and person of Sergey A. BACHKOVSKY[1] (BACHKOVSKY), located at 379 Quaker Ridge Road, Greene, Maine 04236 ("the PREMISES"). A more detailed description and photographs of the PREMISES that will be searched pursuant to a search warrant is attached hereto as Attachment A.

3.      The facts set forth in this Affidavit are based on my own personal investigation and on information I obtained from other individuals, including other law enforcement officers; on my review of documents and records related to this investigation; and on information gained through my training and experience.  This Affidavit does not set forth each and every fact that I or others have learned during the course of this investigation.

4.      Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, I am relying on information provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Such statements are reported in sum and substance, rather than verbatim, unless otherwise indicated.  Wherever in this

---

[1] Per Maine driver's license records, BACHKOVSKY's name is spelled "Sergey Bachkovsky." Messages sent from BACHKOVSKY's email, eBay, and Facebook accounts include the signature "Sergei." BACHKOVSKY's business name is "Sergei Bachkovsky Art and Photography."

Affidavit I state a belief, such belief is based upon my training and experience and the information obtained through this investigation.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1716D and 39 U.S.C. § 3015(d) (Nonmailable Wildlife), 16 U.S.C. § 703(a) (Migratory Bird Treaty Act), 16 U.S.C. §§ 1538(a)(1)(F) and 1540(b)(1) (Endangered Species Act), 16 U.S.C. §§ 3372(a)(1), 3372(a)(2)(A), and 3373(d)(1)(B) (Lacey Act) and 16 U.S.C. §§ 1372(a)(4)(B) and 1375(b) (Marine Mammal Protection Act) (collectively, the "Subject Offenses") have been committed by BACHKOVSKY and persons known and unknown (the "Subjects"). There is also probable cause to search the PREMISES and person of BACHKOVSKY described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes, further described in Attachment B.

6.      The investigation, as set forth herein, has focused on the illegal purchase and sale of whale parts in violation of federal law. I believe there is probable cause to believe that the PREMISES and person of BACHKOVSKY, as described in Attachment A, contains evidence of a crime, items illegally possessed, and property used or intended to be used in committing the Subject Offenses.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  See 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United

States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

## I.   Federal Laws Relating to Trafficking in Wildlife

8.    The FWS enforces several laws and regulations relating to trafficking in wildlife including the Endangered Species Act ("ESA") (16 U.S.C. §§ 1538 et seq.); the Lacey Act (16 U.S.C. §§ 3372 and 3373 et seq.); and the Marine Mammal Protection Act ("MMPA") (16 U.S.C. §§ 1371 et seq.).

9.    The ESA is a domestic law that provides for the protection and recovery of imperiled species and the ecosystems upon which they depend.  Under the ESA, species may be listed as either endangered or threatened.  "Endangered" means a species is in danger of extinction throughout all or a significant portion of its range.  "Threatened" means a species is likely to become endangered within the foreseeable future.

10.   The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") is an international treaty that provides protection to fish, wildlife, and plants that are or may become imperiled due to the demands of international markets.  The United States has implemented CITES as part of the ESA and the regulations promulgated thereunder.  See 16 U.S.C. § 1538(c)(l) (providing that it shall be "unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to  the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES] and the regulations promulgated thereunder"); 50 C.F.R. Parts 14 and 23.

4

11.     Species protected under CITES are listed in a series of appendices (Appendices I, II, and III).  Appendix I includes species threatened with extinction and provides the greatest level of protection.  International trade in Appendix I species for primarily commercial purposes is essentially prohibited.  Examples of Appendix I listed wildlife include whales, sea turtles, sawfishes, Asian elephant, and tigers.  A species listed under Appendix I of CITES may be imported to the United States from a foreign country only if, prior to importation, the importer possesses a valid CITES export permit issued by the country of export and a valid CITES import permit issued by the United States.

12.     Importers or their agents must file with FWS a completed FWS Declaration for Importation or Exportation of Fish or Wildlife (FWS Form 3–177), signed by the importer or the importer's agent, upon the importation of any wildlife.  See 50 C.F.R. § 14.61.  The FWS must clear all wildlife species listed as protected under CITES which are imported into the United States.  To obtain clearance, the importer or importer's agent must make available all shipping records (waybills, packing lists, invoices, etc.), permits, and documents required by the laws and regulations of the United States or of any foreign country. The agent must also make available all shipping records from the country of export or re-export; and the wildlife being imported.  See 50 C.F.R. § 14.52.

13.     Several federal laws criminalize the importation, purchase, or possession of trafficked wildlife.  For example, the Lacey Act makes it unlawful to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken,

possessed, transported, or sold in violation of any law, treaty, or regulation of the United States.  The Lacey Act further prohibits making or submitting any false record, account of label for wildlife that is imported, exported, transported, sold, purchased, or received from any foreign country or transported in interstate or foreign commerce (16 U.S.C. § 3372(d)).

14.     The MMPA establishes a moratorium on taking and importing marine mammals, including parts and products.  Marine mammals include whales. A National Oceanic And Atmospheric Administration (NOAA) Letter of Determination for Protected Species Parts and Products is required to import, export, and sell whale items. The letter must be kept with items that are sold.

**II.      The Subject Accounts**

15.     As set forth below, there is probable cause to believe that BACHKOVSKY committed the Subject Offenses by importing whale parts into the United States, and selling and shipping endangered whale parts in interstate commerce in the District of Maine and elsewhere. Further, there is probable cause to believe that the PREMISES and person of BACHKOVSKY contains evidence of these offense, items related to the offenses that are illegally possessed, and property used or intended to be used in committing the Subject Offenses

16.     Additionally, there is probable cause to believe that BACHKOVSKY utilized an eBay account under username "iscreamforscrim" (the "BACHKOVSKY EBAY ACCOUNT") in furtherance of the SUBJECT OFFENSES. There is also probable cause to believe that BACHKOVKSY utilized aol.com/Yahoo email accounts

packleadersb@aol.com ("BACHKOVSKY AOL ACCOUNT 1") and

sbachkovskyartandphotography@aol.com ("BACHKOVSKY AOL ACCOUNT 2").

17.    Specifically, BACHKOVSKY utilized the aforementioned eBay and

AOL/Yahoo accounts (collectively, the SUBJECT ACCOUNTS) to arrange the illegal sale

and shipment of endangered whale parts from the District of Maine to me, while I acted

as an undercover agent in the Northern District of New York.

**III.    The Investigation**

18.    On or about June 21, 2023, I observed "blank Resin Reproduction Whale

replica tooth ready to scrimshaw" being offered for sale on eBay by the BACHKOVSKY

EBAY ACCOUNT, which I believe to be utilized by BACHKOVSKY of Greene, Maine.[2]

Wildlife traffickers frequently list ivory as resin or plastic to avoid detection. The listing

included multiple photographs of what appeared to be sperm whale (*Physeter*

*macrocephalus*) teeth. According to the listing, the item location was "Greene, Maine,

United States." Sperm whales are federally protected under the ESA as endangered, the

MMPA, and are listed under Appendix I of CITES. A photograph from the eBay listing is

depicted below:

---

[2] "Scrim" or scrimshaw typically refers to engravings and carvings on bone or teeth.



19.     I reviewed the BACHKOVSKY EBAY ACCOUNT "About" page. The "About page" indicated that the account holder was an eBay member since July 1, 2007, and listed the contact email as BACHKOVSKY AOL ACCOUNT 2. The BACHKOVSKY EBAY ACCOUNT profile picture appears to be a photograph of BACHKOVSKY, based on comparison to BACHKOVSKY's Maine driver's license photograph.

20.     I reviewed the BACHKOVSKY EBAY ACCOUNT Feedback profile. Some of the listing titles were included.  The BACHKOVSKY EBAY ACCOUNT showed five listings with "whale tooth" from "More than a year ago."

21.     On or about June 21, 2023, while acting undercover, I sent an eBay message to the BACHKOVSKY EBAY ACCOUNT, regarding eBay listing "blank Resin Reproduction Whale replica tooth ready to scrimshaw." In the message, I asked if the whale tooth was real and what type of whale it was from. On the same date, I received a message from the BACHKOVSKY EBAY ACCOUNT which read, "Contact me for details" with an attached photograph. The photograph showed what appeared to be a whale

8

tooth laying on top of a piece of paper listing "PACKLeAdeRSb@aol.com"

(BACHKOVSKY AOL ACCOUNT 1).

22.     Based on my training and experience, wildlife traffickers that initially meet

and conduct business via e-commerce platforms like eBay may move their interactions

to direct forms of communication, such as email, to continue their transactions. Wildlife

traffickers do this to avoid scrutiny from the e-commerce platforms, which often

prohibit the sale of protected wildlife. Wildlife traffickers also do this to avoid paying e-

commerce platform transaction fees.

23.     On or about June 21, 2023, I sent an email to BACHKOVSKY AOL

ACCOUNT 1 regarding the whale tooth. On or about June 22, 2023, I received an email

reply from BACHKOVSKY AOL ACCOUNT 1, which listed the sender as "Dog Temple."

The email read, "Hello. I apologize for not getting back to you earlier. I had to cancel the

auction because the item sold on another website I sell on. I'm a scrimshander myself

and am going through my inventory. I'll probably let a few more go. If you're interested .

Plus I do have a several antique sperm whale ear bones I can send you a picture if you're

interested . Best Regards , Sergei Bachkovsky." Attached to the email were photographs

of what appeared to be different types of ivory, including sperm whale teeth. Some teeth

appeared raw while others were scrimshawed. Some of the photographs were labeled

"SERGEI A BACHKOVSKY FINE ART". On the same date, I  received an email from

BACHKOVSKY AOL ACCOUNT 1 which contained photographs of items stated to be

sperm whale ear bones. One of the photographs includes a ruler that lists "FRANK

GALOS CHEVROLET." Frank Galos Chevrolet was a car dealership in Saco, Maine. The photograph appears below:



24.     On or about June 28, 2023, I observed "blank Resin Reproduction Whale replica tooth ready to scrimshaw Open For Offers" being offered for sale on eBay by the BACHKOVSKY EBAY ACCOUNT. The starting bid was "US $350.00." The item appeared to be a painted whale ear bone, previously offered by BACHKOVSKY to me via BACHKOVSKY AOL ACCOUNT 1. The item description listed: "Another incredible museum quality piece, I'm letting go from my antique store. And personal collection. Purchased this beautiful thing in Europe when I on my vacation . I'm scrimshander myself and do collect some unique pieces of Scrimshaw and Whaling history. It is the same kind of items exposed in Maritime Museum's all over the world."

### Undercover Buy 1

25.     On or about June 28, 2023, I sent an eBay message to the BACHKOVSKY EBAY ACCOUNT, regarding eBay listing "blank Resin Reproduction Whale replica tooth ready to scrimshaw Open For Offers." In the eBay message, I offered to buy the whale

10

ear bone for $500. On or about June 29, 2023, I received a message from the

BACHKOVSKY EBAY ACCOUNT which read, "Ok , 500 works." On the same date, I sent

an eBay message to the BACHKOVSKY EBAY ACCOUNT, asking where to pay. I

received a message from the BACHKOVSKY EBAY ACCOUNT which read, "Ok , thank

you. Here's my contact information." Attached to the message was what appeared to be

the same photograph previously sent, showing a whale tooth laying on top of a piece of

paper, listing "PACKLeAdeRSb@aol.com" (BACHKOVSKY AOL ACCOUNT 1).

      26.    On or about June 29, 2023, I sent an email to BACHKOVSKY AOL

ACCOUNT 1, regarding the whale ear bone. On the same date, I received an email from

BACHKOVSKY AOL ACCOUNT 1, which read, "I have a few sperm whale ear bones that

I'm selling.  Let me know if you're interested and I'll send some photos." I sent a reply

email indicating that I was interested. On the same date, I received an email message

from BACHKOVSKY AOL ACCOUNT 1 which contained photographs of the whale ear

bones.

      27.    On or about June 30, 2023, I communicated via email with

BACHKOVSKY AOL ACCOUNT 1 to negotiate the purchase of one painted whale ear

bone and one non-painted whale ear bone for a total of $680. On that date, I received a

PayPal money request via email. The money request listed that it was from Sergei

Bachkovsky Art and Photography (the "BACHKOVSKY PAYPAL ACCOUNT") for "Folk

art, shipping, and insurance." PayPal listed the recipient "contact info" as the following:

Sergei Bachkovsky Art and Photography sbachkovskyartandphotography@aol.com

11

(BACHKOVSKY AOL ACCOUNT 2). I then sent the $680 payment via PayPal as requested.

28.     On July 1, 2023, I received an email from BACHKOVSKY AOL ACCOUNT 1. The email had an attached photograph of what appeared to be a United States Postal Service (USPS) post office mail receipt dated July 1, 2023.  The receipt listed USPS post office address 677 Route 202 Greene, ME 04236.  The receipt listed one product purchased, a Priority Mail shipment sent to Latham, NY, with tracking number 9506115379313182351946.

29.     On July 3, 2023, I received the shipment in New York.  The shipping container was a USPS Priority Mail cardboard box. The shipment was labeled with tracking number 9506115379313182351946. The shipping label listed the sender as "S Bachkovsky 379 Quaker Ridge Rd. Greene, ME  04236." The shipment contained the purchased two whale ear bones.  The shipment was not accompanied by ESA or MMPA permits.

30.     A FWS Forensic Scientist later conducted genetic analysis of the whale ear bones in the shipment. The FWS Forensic Scientist concluded that biological material sampled from the painted whale ear bone originated from blue whale (*Balaenoptera musculus*). The FWS Forensic Scientist concluded that biological material sampled from the non-painted whale ear bone originated from Antarctic minke whale (*Balaenoptera bonaerensis*). Blue whales are federally protected under the ESA as endangered. Blue whales and Antarctic minke whales are federally protected under the MMPA and listed under Appendix I of CITES.

31.     On or about July 5, 2023, I sent an email to BACHKOVSKY AOL ACCOUNT 1, stating the following: "Its hard to come by such beautiful whale items since they're protected;" "where are the items from?;" "Are there any letters, permits or other documents available?;" and "Can you please send photos of teeth you have available?" On or about July 8, 2023, I received an email from BACHKOVSKY AOL ACCOUNT 1, which contained multiple photographs of whale teeth.

32.     On or about July 6, 2023, using a different undercover eBay account, I sent an eBay message to the BACHKOVSKY EBAY ACCOUNT, regarding eBay listing "blank Resin Reproduction Whale replica tooth Open For Offers." In the eBay message I stated: "is there a fed marine mammals permit with it, more $ if it does. let me know what you want to get for it."  On or about July 8, 2023, I received a message from the BACHKOVSKY EBAY ACCOUNT which read, "Sorry Im way from home. Probably around $550 including shipping and insurance."

33.     On or about November 29, 2023, the Hon. U.S. Magistrate Judge Karen Frink Wolf issued a search warrant (hereinafter, the "AOL Warrant") authorizing the search of BACHKOVSKY AOL ACCOUNTS 1 and 2. *See* In the Matter of the Search of Information Associated with Packleadersb@aol.com, and Sbachkovskyartandphotography@aol.com that is Stored at Premises Controlled by Yahoo Inc. Dkt. 2:23-mj-00345-KFW, which is attached hereto and incorporated herein by reference. I later reviewed content of BACHKOVSKY AOL ACCOUNTS 1 and 2 obtained pursuant to the AOL Warrant and observed multiple email conversations regarding the sources of BACHKOVSKY's whale parts. For example, in early August

13

2020, there were a number of communications between BACHKOVSKY AOL ACCOUNT 1 and nero2020@yandex.ua (Email Contact 1), regarding the purchase of whale teeth from Email Contact 1. Yandex is an internet company based in Russia. "UA" is the two-letter country code domain for Ukraine. On or about August 31, 2020, an email was sent from BACHKOVSKY AOL ACCOUNT 1 to kanakacreations671@gmail.com (Email Contact 2) which read, "You have purchased a few teeth from me in the past, a few through ebay and a few others privately. I purchased a few teeth from Russia for my work and I have chosen the one that will work best for me. I was going to post to an online auction, but wanted to offer you one." Between about April and May 2022, there were a number of communications between BACHKOVSKY AOL ACCOUNT 2 and goldnsilverstandard@gmail.com (Email Contact 3) regarding the import of six whale ear bones, stated to be from Ukraine.

### Undercover Buy 2

34.     On or about December 15, 2023, I observed eBay item number 134853742044, "Scrimshaw: A Complete Illustrated Manual, Second Edition Whale Whaling," being offered for sale by the BACHKOVSKY EBAY ACCOUNT. The listing included multiple photographs of what appeared to be whale teeth. It appeared that one tooth had scrimshaw on it and the remainder were raw. The listing stated the item location was "Greene, Maine, United States."

35.     On or about December 15, 2023, I sent an eBay message to the BACHKOVSKY EBAY ACCOUNT regarding the eBay listing. I later communicated via eBay messages with the BACHKOVSKY EBAY ACCOUNT to negotiate the purchase of 21

raw whale teeth and one scrimshaw whale tooth for a total of $635. On or about

December 16, 2023, I received a PayPal money request via email. The money request

listed that it was from Sergei Bachkovsky Art and Photography for "Art." PayPal listed

the recipient "Contact info" as the following: Sergei Bachkovsky Art and Photography

sbachkovskyartandphotography@aol.com. On December 16, 2023, at approximately

1:38 p.m., I purchased the whale teeth in an undercover capacity. I sent $635 in

undercover funds to the BACHKOVSKY PAYPAL ACCOUNT for the whale teeth.

36.     On or about December 20, 2023, I received an eBay message from the

BACHKOVSKY EBAY ACCOUNT, which read, "our post office get a power last night so I

able to send it today." I received a photograph of a USPS receipt from the

BACHKOVSKY EBAY ACCOUNT. The receipt showed that a Priority Mail padded

envelope shipment was sent from the post office in Greene, Maine, to Latham, New

York, via tracking numbers 9505 5153 7931 3354 3921 89 and 9505 8153 7931 3354

3922 03. The shipment was paid for in cash.

37.     On or about December 22, 2023, I received the shipment in New York.

The shipping container was a USPS priority mail padded envelope. The shipment was

labeled with tracking numbers 9505 5153 7931 3354 3921 89 and 9505 8153 7931 3354

3922 03. The shipping label listed the sender as "S. Bachkovsky 379 Quaker Ridge Rd.

Greene, 04236 ME." The shipment contained the purchased 21 raw whale teeth and one

scrimshaw whale tooth. The shipment was not accompanied by ESA or MMPA permits.

38.     A FWS Forensic Scientist later conducted genetic analysis of the whale

teeth in the shipment. The FWS Forensic Scientist concluded that biological material

sampled from fifteen of the raw teeth originated from sperm whale. The FWS Forensic Scientist concluded that the species origin of the material sampled from the remainder of the teeth could not be determined. A different FWS Forensic Scientist conducted morphological (visual) analysis of the teeth in the shipment and concluded that all of the teeth originated from a large marine mammal, either Odontoceti (toothed whales) or Pinnipedia (seals). Sperm whales are a toothed whale, and all seals are covered by the MMPA.

### Undercover Buy 3

39.     On or about January 22, 2024, I received an eBay message from the BACHKOVSKY EBAY ACCOUNT, which read, "I have this group of teeth, I was planning to sell . Just let me know if you have any interest. I'm asking $300 for all .Best Regards, Sergei." Attached to the message were photographs of what appeared to be five whale teeth.

40.     On or about January 23, 2024, I replied that I was interested in various animal parts. Later the same date, I received a message from the BACHKOVSKY EBAY ACCOUNT which read, "Here's some stuff" and further messages with attached photographs of various wildlife parts. Later, I received a message from the BACHKOVSKY EBAY ACCOUNT which read, "So I have a set of moose teeth , one artifact, polar bear fang pendant, complete black bear skull, for black bear paws , antique Native American ceremonial spiritual fetish Hooper hawk , femaledeer skull , male deer skull with the lower jaw , and female moose skull with the lower jaw."

16

41.     A FWS Forensic Scientist later identified the "Native American ceremonial spiritual fetish Hooper hawk" as a broad-winged hawk (*Buteo platypterus*) carcass. Broad-winged hawks are protected by the Migratory Bird Treaty Act (MBTA). The MBTA makes it unlawful to offer to sell a migratory bird without a permit.  16 U.S.C. § 703(a).

42.     Per Maine law, except as otherwise permitted, a person, with limited exceptions, may not buy, sell or offer for sale or barter a bear, deer, or moose. 12 M.R.S. § 11217. On or about January 24, 2024, FWS Special Agent Brian Engelhard queried Maine Department of Inland Fisheries & Wildlife license records and did not observe any hunting license records for BACHKOVSKY. On or about January 30, 2024, the Maine Warden Service confirmed that BACHKOVSKY has never had a Maine Hide Dealer's License, which absent certain exceptions, would be required to lawfully sell bear, deer, or moose under Maine law.[3]

43.     On or about January 23, 2024, I sent an eBay message to the BACHKOVSKY EBAY ACCOUNT, asking to have a call. On January 24, 2024, I received a reply from the BACHKOVSKY EBAY ACCOUNT which read, "Facebook messenger works. Just let me know what time to be expecting yourcall via Facebook messenger . Here's the name of my Facebook page. "Sergio Leone Russo" my pseudonym. Best Regards, Sergei."

---

[3] 12 M.R.S. § 11217(2)(A) provides that "[a] person who has lawfully killed or trapped and registered a bear may sell, without a hide dealer's license, only the hide, head, teeth, claws not attached to the paws, fat not attached to the meat and gallbladder of that animal."

44.     On or about January 24, 2024, at approximately 6:07 p.m., I placed a voice call to the "Sergio Leone Russo" Facebook profile (the "BACHKOVSKY FACEBOOK ACCOUNT") via Facebook Messenger. I recorded the voice call with a digital voice recorder. The recipient, who I addressed as "Sergei," stated the following in sum and substance: he does multiple forms of art including scrimshaw; he buys and sells antiques; he has traveled far from Maine to get stuff he likes; and he's traveled to New York, Rhode Island, Connecticut, and close to the Canadian border. "Sergei" stated that he sells his private collection from a marketplace. "Sergei" stated that he has a "huge castle." I stated that the bird and bear items are "hard to get because they're protected." I stated that I was interested in the bear paws and "Sergei" offered to sell them for $300. I agreed to purchase from "Sergei" five whale teeth for $300 and four bear paws for $300. "Sergei" explained that he met a customer on eBay from Maine who purchased whale teeth from him. The customer told "Sergei" that he was interested in whale ear bones. "Sergei" bought whale ear bones for the customer and the customer later refused, stating, "there's regulation, there law."

45.     On or about January 24, 2024, I received a Facebook message from the BACHKOVSKY FACEBOOK ACCOUNT, which read, "my PayPal is sbachkovskyartandphotography@aol.com. The total for everything including shipping is $625. Thanks again. Best regards, Sergei." On January 25, 2024, at approximately 4:40 p.m., I purchased the whale teeth and bear paws in an undercover capacity. I sent $625 in undercover funds to the BACHKOVSKY PAYPAL ACCOUNT for the wildlife. Later the

18

same day, I received a Facebook message from the BACHKOVSKY FACEBOOK
ACCOUNT, which read, "I will send on Monday and send you trucking information."

### Shipping Surveillance – January 29, 2024

46.     On or about January 29, 2024, Special Agent Engelhard and I conducted
surveillance of shipping activity in Greene, Maine. Surveillance locations included the
PREMISES the USPS post office, 677 US-202, Greene, Maine 04236. Maine driver's
license records list that BACHKOVSKY's mailing address is 379 Quaker Ridge Road,
Greene, Maine 04236. I conducted surveillance from a vehicle across from the Greene,
Maine, post office, at approximate address 678 US-202, Greene, Maine 04236.

47.     At approximately 1:43 p.m., Special Agent Engelhard observed a white van
depart the driveway of the PREMISES and turn south onto Quaker Ridge Road. Special
Agent Engelhard followed the van until it turned into the Greene, Maine, post office.
The van arrived at the post office at approximately 1:48 p.m.

48.     At approximately 1:48 p.m., I observed a white Ford van bearing Maine
license plate "752 BED" enter the post office parking lot from US-202 and park near the
post office main entrance. Per Maine Bureau of Motor Vehicles records, BACHKOVSKY
is the registered owner of the above van.

49.     I observed what appeared to be a white male with facial hair exit the
driver's side door of the van and enter the post office. The man appeared to be carrying a
USPS medium size box. The man was consistent in appearance to BACHKOVSKY's
Maine driver's license photograph.

19

50.     At approximately 1:50 p.m., I observed the man walk out of the post office, get into the driver's side seat of the van, then drive out of the parking lot heading eastbound on US-202. At approximately 1:52 p.m., the surveillance ended.

51.     On January 29, 2024, at about 2:23 p.m., I received a Facebook message from the BACHKOVSKY FACEBOOK ACCOUNT, which read, "Here's the number # You supposed to be received on Wednesday  . Best Regards , Sergei." Following the message was a photograph of a USPS receipt. The receipt showed that on the same date, at 1:50 p.m., a Priority Mail medium flat rate box shipment was sent from the post office in Greene, Maine, to Latham, New York, via tracking number 9505 5153 7931 4029 4022 26. The shipment was paid for in cash.

52.     On or about January 31, 2024, I received the shipment in New York.  The shipping container was a USPS Priority Mail medium flat rate box. The shipment was labeled with tracking number 9505 5153 7931 4029 4022 26. The shipping label listed the sender as "S. Bachkovsky 379 Quaker Ridge Rd. Greene ME. 04236." The shipment contained the purchased five whale teeth and four bear paws. The shipment was not accompanied by ESA or MMPA permits.

53.     A FWS Forensic Scientist later conducted genetic analysis of the whale teeth in the shipment. The FWS Forensic Scientist concluded that biological material sampled from four of the teeth originated from sperm whale. The FWS Forensic Scientist concluded that the species origin of the material sampled from the remaining tooth could not be determined. A different FWS Forensic Scientist conducted morphological analysis of the teeth in the shipment and concluded that all of the teeth

originated from a marine mammal, either Odontoceti (toothed whales) or Pinnipedia (seals). The FWS Forensic Scientist conducted morphological analysis of the bear paws and concluded that they are four American black bear (*Ursus americanus*) feet.

### Undercover Buy 4

54.     On or about March 18, 2024, I sent a Facebook message to the BACHKOVSKY FACEBOOK ACCOUNT, inquiring about buying more whale parts. On or about March 19, 2024, I received a reply from the BACHKOVSKY FACEBOOK ACCOUNT which read, "I will contact the person from Europe and see what he got. Will keep you posted as something interesting comes up. . I have other  person from Canada he has ear bones and really pristine conditions . I would like to have for myself, but he was concerned about the border. So we're still back-and-forth , I'm trying find some way to get them. I still have this group and they are still available , if you're interested , I make a good deal for you . $350 for both, including shipping and full insurance. Best Regards, Sergei." Following the message was a photograph with what appeared to be two whale teeth. I later received another message from the BACHKOVSKY FACEBOOK ACCOUNT which contained an offer to sell me the two whale teeth and the "Native American ceremonial spiritual fetish Hooper hawk" bird body for $515.

55.     On or about March 19, 2024, at approximately 10:03 a.m., I purchased the whale teeth and bird body in an undercover capacity. I sent $515 in undercover funds to the BACHKOVSKY PAYPAL ACCOUNT for the wildlife. Later the same date, I received a Facebook message from the BACHKOVSKY FACEBOOK ACCOUNT, which read, "I will

pack everything when I get back home and trying to send today , if not first thing tomorrow morning."

56.     On or about March 20, 2024, at approximately 12:25 p.m., I received a Facebook message from the BACHKOVSKY FACEBOOK ACCOUNT, which read, "the package is in your way." I received a further message from the BACHKOVSKY FACEBOOK ACCOUNT which contained a photograph of a USPS receipt. The receipt showed that on the same date, at 11:07 a.m., a Priority Mail shipment was sent from the post office in Greene, Maine, to Latham, New York, via tracking number 9505815379314080412555. The shipment was paid for in cash.

57.     On or about March 22, 2024, I received the shipment in New York.  The shipping container was a brown cardboard box labeled with tracking number 9505815379314080412555. The shipping label listed the sender as "S Bachkuusv 379 Quaker Ridge Rd Greene, ME 04236." The shipment contained the purchased two whale teeth and bird body. The shipment was not accompanied by ESA, MBTA, or MMPA permits.

58.     A FWS Forensic Scientist later conducted genetic analysis of the whale teeth in the shipment. The FWS Forensic Scientist concluded that biological material sampled from the teeth originated from sperm whale. A different FWS Forensic Scientist conducted morphological analysis of the bird body and concluded that it is a broad-winged hawk carcass.

59.     On or about April 19, 2024, I queried the FWS Law Enforcement Management Information System database and did not observe any FWS import / export declarations or permit records pertaining to BACHKOVSKY.

60.     Based on the facts set forth above, there is probable cause to believe that BACHKOVSKY has negotiated the sale of whale parts via eBay messages, Facebook messages, and email, imported whale parts into the United States, and accordingly, the PREMISES and person of BACHKOVSKY is likely to contain evidence relating to the purchase or sale of whale parts and other protected wildlife, including but not limited to mammals and birds, by BACHKOVSKY or others.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

61.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

62.     Based on my knowledge, training, and experience, eBay, PayPal, and AOL email account holders can access their accounts from a variety of devices, including cellular telephones/smartphones, tablets, and computers. It is not uncommon for individuals to access such accounts using multiple devices, and that records and information concerning the use of the accounts can be found on those devices.

63.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

subject devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on subject devices because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of ta file (such as a paragraph that has been deleted form a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether the data stored on a computer is evidence may depend on other information stored on the compute and the application of knowledge about how a compute behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

24

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.      I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit this type of crime may contain data that is evidence of how the device was used, data that was sent or received, and other records that indicate the nature of the offense.

64.      I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab; digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

65.      Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.

The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

66.     The warrant I am applying for would permit law enforcement to obtain from certain persons the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant.  I seek this authority based on the following:

a.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices  offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

b.     If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front

of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

      c.     If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID."  During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

      d.     In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

      e.     As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able

to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.      I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.      In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a

28

common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to unlock the device using biometric features in the same manner as discussed above.

h.       Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the subject premises and reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; (2) hold the device in front of the face of those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## **CONCLUSION**

67.       Based upon the foregoing, I submit that there is probable cause to believe that the PREMISES and person of BACHKOVSKY contains evidence of, contraband or fruits of, and/or property designed for use, intended for use, or used in committing the violations of the laws and offenses outlined in this Affidavit.  Accordingly, I respectfully request that this Court issue a search warrant authorizing the search of the PREMISES

29

and person of BACHKOVSKY, described in Attachment A, for the items described in Attachment B.

Respectfully submitted,

*John Thompson*

John Thompson
Special Agent
United States Fish and Wildlife Service

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date:  Jun 10 2024

City and state:  Portland, Maine

Judge's signature

Karen Frink Wolf,   U.S. Magistrate Judge
Printed name and title

30